IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FREDERICK HENDERSON,
          Plaintiff

      v.

DR. ANTHONY BUSSANICH M.D.,
DR. ABDEL SALAM M.D.
HEALTH SERVICES ADMINISTRATOR JOHN HEMPHILL,
PHYSICIANS ASSISTANT IVAN NAVARRO,
PHYSICIANS ASSISTANT MARK PEORIA,
PHYSICIANS ASSISTANT WILLIAM BOGLER,
ASSOCIATE WARDEN TROY LEVI, and
WARDEN JOSEPH V. SMITH are sued in their
individual and official capacities.
          Defendants

1: CV - 06    925

COMPLAINT
Civil Action No.

FILED
WILLIAMSPORT, PA

MAY 0 3 2006

MARY E. D'ANDREA, CLERK
Per _____
         Deputy Clerk

## A. COMPLAINT

1.     Plaintiff pro se, for his complaint states the following;

## B. PARTIES

2.     Plaintiff Frederick Henderson, a federal prisoner, was confined in the United States Medical Center For Federal Prisoners (USMCFP), located at 1900 West Sunshine Street, in the City of Springfield, in the State of Missouri, from February 2003 to April 2004. Plaintiff is currently confined at the United States Penitentiary (USP Lewisburg), located at Robert Miller Road, in the Borough of Lewisburg, in the State of Pennsylvania.

3.     Plaintiff Frederick Henderson, is and was at all relevant times mentioned herein, an adult citizen of the United States and a resident of the State of Pennsylvania.

8.     Defendant Physicians Assistant Ivan Navarro ("defendant Navarro") was at all relevant times herein an employee of the FBOP employed in the capacity of a Physicians Assistant responsible for the mid-level medical care of inmates in the HSU confined at U.S.P. Lewisburg.

9.     Defendant Physicians Assistant Mark Peoria was at all relevant times herein an employee of the FBOP employed in the capacity of a Physicians Assistant responsible for the mid-level medical care of inmates in the HSU confined at U.S.P. Lewisburg.

10.     Defendant Physicians Assistant William Bogler ("defendant Bogler") was at all relevant times herein an employee of the FBOP employed in the capacity of a Physicians Assistant responsible for the mid-level medical care of inmates in the HSU confined at U.S.P. Lewisburg.

11.     Defendant Warden Joseph V. Smith ("defendant Smith") was at all relevant times herein an employee of the FBOP employed in the capacity of Warden responsible for the day to day operations of U.S.P. Lewisburg and the overall supervision of all staff. He is also responsible for the safekeeping and cre of all inmates at the prison.

### C. JURISDICTION

12.     This is a Bivens action authorized by **Bivens v. Six Unknown Fed. Narcotics Agents**, 403 U.S. 388, 29 L.ED.2d 619, 91 S.Ct. 1999 (1971), to redress violations of rights and laws secured by the **Eighth Amendment of the United States Constitution** and the **United States Code 18 U.S.C. § 4042(a)(2)(3)**. The court has jurisdiction under **28 U.S.C. § 1331 and 1343(a)(3)**. Plaintiff seeks

4.     Defendant Dr. Anthony Bussanich M.D. ("defendant Bussanich") was at all relevant times herein an employee of the Federal Bureau of Prisons ("FBOP") employed in the capacity as the Clinical Director of the Health Services Unit ("HSU") at the United States Penitentiary Lewisburg ("U.S.P. Lewisburg") In defendant Bussanich's position as Clinical Director and Physician he is responsible for the medical care of all inmates at U.S.P. Lewisburg. He is also responsible for the supervision of all medical staff.

5.     Defendant Dr. Abdel Salam M.D. ("defendant Salam") was at all relevant times herein an employee of the FBOP employed in the capacity as a Physician in the HSU at U.S.P. Lewisburg. In his position as a physician, defendant Salam was responsible for the medical care of inmates and supervision of mid-level practioners ("MLP'(s)). Defendant Salam was plaintiff's primary care provider during the time and actions that give rise to this suit. Also, defendant Salam is currently retired from the FBOP.

6.     Defendant Health Services Administrator John Hemphill ("defendant Hemphill") was at all relevant times herein an employee of the FBOP employed in the capacity as a Health Services Administrator ("H.S.A.") in the HSU at U.S.P. Lewisburg responsible for the day to day operations of that department. Defendant Hemphill was also responsible for responding to inmated administrative griveances filed on the medical staff.

7.     Defendant Associate Warden Troy Levi ("defendant Levi") was at all relevant times herein an employee of the FBOP employed in the capacity of Associate Warden at U.S.P. Lewisburg responsible for the overall supervision of the HSU department.

declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Plaintiff's claim for injunctive relief are authorized by 28 U.S.C. §§ 2283 and 2284, and **Federal Rules of Civil Procedure**, Rule 65.

## D. VENUE

13.    The Middle District of Pennsylvania is an appropiate venue under 28 U.S.C. § 1391(e),(1)(2)(3). because it is where defendants reside, where the acts that give rise to this action occurred and is where plaintiff resides.

## E. PREVIOUS LAWSUITS BY PLAINTIFF

14.    Plaintiff has filed other lawsuits dealing with the same facts involved in this action or otherwise relating to his imprisonment. The parties to these pending lawsuits are;

Suit # 1.
a) Plaintiff: Frederick Henderson
b) Defendant: United States of America
c) **Civil Action No. 05-03335-CV-S-GAFp**
d) This case is filed in the United States District Court For The Western District of Missouri, pursuant to 28 U.S.C. § 2671 et seq. The court has jurisdiction under 28 U.S.C. § 1346. of the **Federal Tort Claims Act** (FTCA)
e) This case was assigned to District Court Judge Gary A. Fenner
f) This suit was filed on July 26, 2005
g) There is no disposition in this case as it is still pending.

Suit # 2.
a) Plaintiff: Frederick Henderson
b) Defendants: Dr. James T. Schaeffer and St. Johns Regional health Center
c) Civil Action No. 06-3045-CV-S-GAF-p
d) This case is filed in the United States District Court For The Western District of Missouri, pursuant to 28 U.S.C. § 1332.(a)(1), (c)(1). for negligence and medical malpractice. Venue is proper under 28 U.S.C. § 1391 (a)(1)(2)(3).
e) This case was assigned to District Court Judge Gary A. Fenner
f) This suit was filed on February 03, 2006.
g) There is no disposition in this case as it is still pending

Suit # 3.
a) Plaintiff: Frederick Henderson
b) Defendants: Warden Bill Hedricks, Dr Ernesto Gapasin M.D., Dr Robert Hazelwood M.D. St. Johns Regional Health Center, Physicians Assistant Antonio Alburquerque, Nurse T. Morton R.N., are sued in their individual and official capacities.
c) Civil action No. 06-3050-CV-S-GAF-p
d) This case is filed in the United States District Court For The Western District

of Missouri, under 28 U.S.C. § 1331 and Bivens v. Six Unknown Narcotics Agents, 403 U.S. 388, 29 L.Ed.2d 619, 91 S.Ct 1999 (1971). This suit is for redress of violations of the First and Eighth Amendments of the United States Constitution, 5 U.S.C. § 552a.(g)(1), (C), and 42 U.S.C. § 1997d.

e) This case was assigned to District Court Judge Gary A. Ferner.

f) This suit was filed on February 03, 2006.

g) This case is still pending.

## F. EXHAUSTION OF ADMINISTRATIVE REMEDIES

15.    Plaintiff did use the prisoner griveance system in the institutition to try and solve the problem. I presented facts relating to my complaint in the Federal Bureau of Prisons inmate griveance procedure. The institution, the Northeast Regional Office, and the Central Office of the FBOP all denied my administrative griveances and denied any wrongful conduct by their employees. My request for compensation and relief were also denied. (See Ex. 02, 03, 04, 18, 29, 30, 31, and 32, 37, 38, 39, and 40.

## G. STATEMENT OF CLAIM

16.    Plaintiff realleges and incorporates by reference paragraphs **1 thru 15.** herein.

17.    At all relevant times herein, defendants were "persons" for the purposes of **28 U.S.C. § 1331,** acting individually and under the color of law, to deprive plaintiff of his constitutional rights and his statutory rights, as set more fully below.

## FACTUAL BACKGROUND

**18.**    On October 24, 2003, plaintiff after suffering witha chronic condition of pain located at the right lower back and hip area for several years, was diagnosed with a osteoid lipoma of the right hip by Orthopedic Specialist Consultant Dr. Marion Wolfe M.D. **Ex. 05**

**19.**    On November 05, 2003, plaintiff was transported to St. johns Regional Health Center for a second opinion per request of Dr. Wolfe. Orthopedic Consultant Dr. Gregory P. Daus, M.D. who's opinion it was to have plaintiff obtain a "Bone Scan" and if this test showed that the lesion was "Hot" then total hip arthroplasty should be performed. If not  the lesion should just be biopsied and the condition observed. **Ex. 06**

**20.**    On November 12, 2003, a total body bone scan was performed on plaintiff. **Ex. 07.** Also in November 2003, because of the results of the bone scan and other factors, Dr. Wolfe stated to plaintiff that he recommended a total hip-replacement but would be unable to perform the procedure himself due to his retirement.

**21.**    On January 21, 2004, plaintiff met with Dr. Wolfe's replacement Orthopedic Specialist Consultant Dr. James T. Schaeffer, M.D. who after plaintiff raised concerns and fears about shortening of the right leg and blood clots assured plaintiff that neither would be a problem in this case. Based on those assurances, plaintiff decided to consent to the surgery. *Ex. O8*

**22.**    On January 31, 2004, plaintiff was taken under escort to St. Johns Regional Health Center (SJRHC) located in Springfield, Missouri, where a total hip-replacement surgery of his right hip was performed by Dr. Schaeffer. **Ex.** *09*

23.    On January 31, 2004, plaintiff was transported back to USMCFP after his post-operative evaluation and treatment was interfered with by employees of the FBOP which resulted in plaintiff being improperly discharged from SJRHC and is one of the basis for the suit in Civil Action No. 06-3050-CV-S-GAF-p filed in the U.S. District Court for the Western District of Missouri.

24.    From February 05, thru February 10, 2004, plaintiff was subjected to various acts by employees of the FBOP and SJRHC that were in violation of the **8th Amendment of the U.S. Constitution,** in relation to cruel and unusual punishment in reference to his post-operative and rehabilitative treatment ie. deliberate indifference to plaintiff's pain, improper treatment rendered by a unqualified and uncertified person, refusal of treatment, improper supervision of care, medical malpractice, negligence ect... These charges are also the basis for the Civil Actions identified in ¶ **14. of this complaint.**

25.    On March 24, 2004, while trying to ambulate without the assistance of a walker, plaintiff noticed a pronounced limp. Plaintiff did notice during a subsequent self-examination that his right leg was dramatically shorter than his left leg. plaintiff did notify FBOP medical staff of his leg length descrepancy. **Ex. /0**

26.    On March 27, 2004, plaintiff's leg length descrepancy was confirmed by FBOP Physical Therapist Justin Feola of USMCFP, who measured the right leg as being 7/8 of an inch shorter than the left leg. This measurement proved to be inaccurate at a later time.

27.    On March 28, 2004, all physical therapy was ceased by physical Therapist Justin Feola because of plaintiff's leg length decrepancy. Also on this date plaintiff's physical therapy was stopped by physical Therapist Feola to prevent further injury and plaintiff's condition was reported to the Medical staff.

**28.**    On March 30, 2004, plaintiff was examined by dr. Ernesto Gapasin M.D. Chief of Surgical Services at USMCFP who recommended a lift on the right shoe to compensate for the leg length descrepancy.

**29.**    On April 12, 2004, plaintiff intiated the administrative griveance against Dr. Schaeffer, SJRHC, and USMCFP.

**30.**    On April 22, 2004, plaintiff was fitted for a lift on his right shoe which was measured incorrectly at a ½ inch by Technician Paul C. Rieth at the Prosthetics lab at USMCFP.

**31.**    On April 26, 2004, plaintiff received his orthotic shoes with a lift from a corrections officer while being taken to "Receiving and Discharge" for transfer back to U.S.P. Lewisburg. The fitting of these shoes were not checked by any medical personel from USMCFP or U.S.P. Lewisburg.

## I. RELEVANT FACTS

**32.**    On April 26, 2004, plaintiff was met at Receiving and Discharge at USMCFP by Lieutenant Marisa Rios, Physicians Assistant (PA) Mark Peroria, Senior Officer Specialist Fisher and two unidentified CorrectionOfficer from U.S.P. Lewisburg. Lt. Rios and defendant Peoria assessed plaintiff's mental state, but when plaintiff complained of his medical condition Lt Rios stated, "If that's all thats wrong with you, you can still go on the airlift back to Lewisburg." Defendant Peoria medically cleared plaintiff for the flight despite plaintiff being in severe pain and improperly evaluated. Plaintiff was in severe pain for the entire flight back to Lewisburg.

**33.**    Also, on april 26, 2004, plaintiff arrived at U.S.P. Lewisburg. Though plaintiff's medical records exhibit that he has a sensitivity to Motrin® and plaintiff did communicate such verbally to defendant Peoria, and plaintiff

even requested a different medication, defendant Peoria still allowed plaintiff to be dispensed the Motrin®, thus placing plaintiff in epigastric distress. **Ex.** 49,

34.    On April 29, 2004, plaintiff was taken before the Unit Classification Committee where he informed Associate Warden Sniezk, defendant Levi, and other members of the Committee, about his medical condition, severe pain and the trouble in functioning at U.S.P. Lewisburg because of the stairs. Plaintiff was told by defendant Levi, "You should try to function at this institution.

35.    Plaintiff avers that he was denied any medical treatment from the dates of April 26, 2004 to July 2004, and received inadequate care from July 2004 to March 2005. This inadequate care included but was not limited to; inadequate examinations and evaluations, denial of prosthetic aids, dispensing of harmful or inadequate medications, delay and interference of prescribed treatment and recommendations for such treatment by a qualified certified specialist. plaintiff was kept in severe pain and suffering during these times by various defendants named in this complaint. The chronological facts are set forth below by defendant;

## I. AJUDICATIVE FACTS

36.    On April 26, 2004, defendant Peoria did violate plaintiff's **8th Amendment U.S. Constitutional right** and **18 U.S.C.** 4042(a)(2), (3) when he did not examine and evaluate plaintiff at USMCFP, and allowed plaintiff to be placed on an airlift and allowing plaintiff to fly in severe pain and distress.

37.    On April 26, 2004, defendant Peoria did violate plaintiff's **8th Amendment U.S. Constitutional right** and **18 U.S.C.** 4042(a)(2),(3) when he knowingly allowed plaintiff to be dispensed the medication Motrin® which was known by the

defendant via plaintiff's medical records and verbal communication to defendant by plaintiff. Defendant's allowing of this medication to be dispensed to plaintiff caused severe epigastric distress to occur, causing pain. **Ex.** 49

38.   On April 29, 2004, defendant Levi did violate plaintiff's 8th **Amendment U.S. Constitutional Right** and 18 U.S.C. § 4042(a)(2),(3). when during a intial Unit Classification Committee, after being informed by plaintiff that he was in severe pain and suffering, and unable to safely negotiate the stairs in the institution, defendant Levi showed an attitude of deliberate indifference by not taking any action to relieve plaintiff's suffering and stating, "You should try and function at this institution." This non-action by defendant Levi allowed plaintiff to be kept in a condition of severe pain and suffering.

39.   Also on April 29, 2004, defendant Navarro did violate plaintiff's rights under the 8th **Amendment of the U.S. Constitution** and 18 U.S.C. § 4042(a)(2),(3). when he was deliberately indifferent to plaintiff's serious medical need of treatment for severe pain and suffering, after being verbally informed by plaintiff that the medication he was dispensed which was Motrin® was known to be harmful to him. Defendant Navarro refused to change the medication or even examine or evaluate plaintiff. This non-action by defendant Navarro allowed plaintiff to remain in severe pain and suffering.

40.   On May 7, 2004, plaintiff sent an Inmate To Staff Request Form to defendant Salam requesting medical treatment and an examination. Also in May 2004, plaintiff received a response to the request he sent defendant Salam. *Ex.* 13

41.    On May 21, 2004, defendant Salam did violate plaintiff's rights under the **8th Amendment of the U.S. Constitution** and 18 U.S.C. § 4042(a)(2),(3). when he was deliberately indifferent to plaintiff's serious medical needs which was severe pain and suffering, when after defendant had ordered and had x-rays taken of plaintiff's right hip, he did not examine or evaluate, or render treatment to plaintiff. Defendant Salam also did not change as requested through Defendant Navarro the medication Motrin®. This inaction by defendant Salam resulted in plaintiff being allowed to be in severe pain and suffering .

42.    On May 28, 2004, defendant Navarro did violate plaintiff's rights the **8th Amendment of the U.S. Constitution and 18 U.S.C.** § 4042(a)(2),(3) when he was deliberately indifferent to plaintiff's serious medical needs which was severe pain and suffering, when he did not answer and thus denied plaintiff's written request for an orthopedic or double mattress to relieve pressure on plaintiff's right hip. This inaction by defendant Navarro resulted in plaintiff being allowed to be in severe pain and suffering. **Ex.** _____

43.    Also, on or about May 28, 2004, plaintiff spoke with defendant Smith concerning plaintiff's medical condition and requesting to be given adequate medical treatment and to be transferred to a handicap facility. Defendant Smith's response was to wait for the recommendations of the orthopedic consultant. When plaintiff asked defendant Smith if he should file a administrative griveance, defendant Smith stated, "No don't file one." Defendant Levi was also present at this conversation.

44.    Also, on or about May 28, 2004, plaintiff commenced the administrative remedy process with Correctional Counselor Al Whitecavage. **Ex.'s** _O2_ , _O3_ , **and** _O4_ .

45.    On June 10,2004, defendant Peoria did violate plaintiff's rights
under the **8th Amendment of the U.S. Constitution** and **18 U.S.C. § 4042(a)(2),(3)**
when he was deliberately indifferent to plaintiff's serious medical needs, which
was severe pain and suffering, when after plaintiff submitted a Request For
Medical Or Dental Care (Sick-call slip) to defendant Peoria complaining of
severe pain in the right hip and groin area. Defendant Peoria when asked by plain-
tiff to examine him stated to plaintiff, "If I examine you wil it make the pain
go away?" Defendant Peoria denied plaintiff any treatment for his serious medical
needs and wrote that plaintiff was schedule to be seen by the orthopedic special-
ist in July 2004. Ex. _15_

46.    from June 07, 2004 to June 15, 2004, defendant Salam did violate
plaintiff's rights under the **8th Amendment of the U.S. constitution** and **18 U.S.C.**
**§ 4042(a)(2),(3).** when after plaintiff had requested in writing to be given
medical treatment for his severe pain by defendant Salam, he was denied that
treatment and allowed to remain in severe pain and suffering. Ex. _16_.

47.    On June 30, 2004, defendant Peoria did violate plaintiff's rights
under the **8th Amendment of the U.S. Constitution** and **18 U.S.C. § 4042(a)(2),(3)**
when he was deliberately indifferent to plaintiff's serious medical needs which
was severe pain and suffering, when after plaintiff submitted a sick-call slip
complaining of severe pain of the right hip and groin area. Defendant Peoria
denied plaintiff an examination and treatment, thus allowing plaintiff to remain
in severe pain and suffering. Ex. _17_.

48.    On July 07, 2004, plaintiff initiated the administrative griveance
process concerning the deliberately indifferent treatment of plaintiff's serious
medical needs. This filing was in addition to the filing of the administrative
griveances filed on May 27, 2004. **Ex.** _18_.

49.    On July 16, 2004, plaintiff received a response from defendant Smith in regards to the Request For Administrative Remedy filed on May 28, 2004, which denied plaintiff's request to be given adequate medical care and to be treated and recognized as a handicap individual. **Ex.** 0̲2̲.

50.    On July 21, 2004, plaintiff was seen by the Consultant Orthopedic Specialist Dr. David J. Ball, D.O. who examined and evaluated plaintiff. Dr. Ball made various recommendations concerning care of plaintiff's condititon, such as increased height for the lift of the orthotic right shoe, and decrease usage of stairs. Dr. Ball recognized and noted that plaintiff had a distinguished leg length descrepancy. Dr. Ball stated in reference to his recommendations that, "I've got to tell you these people rarely listen to me. I've got patients here, that I have recommended for surgery, and these people still don't listen. **Ex.** /9̲ ,

51.    On July 22, 2004, plaintiff spoke to defendant Smith concerning the findings and recommendations of Orthopedic Specialist Dr. Ball and defendant Smith's response to Administrative griveance BP-9 No. 336327-F1. **Ex.** 0̲2̲ . Plaintiff asked defendant Smith if he had written and signed the response himself. Defendant Smith replied, "Yes that's my signature." Plaintiff then asked defendant Smith, "How can you say I'm not disabled, when I can hardly walk, especially up and down the stairs, and I'm in constant severe pain?" Defendant Smith replied, "My clinical Director feels you are not disabled, and your medical records show no mention of a disability." Plaintiff replied, "First of all, my medical records from USMCFP Springfield show many inconsistencies and errors. If you look at the Transfer Summary (**Ex.** 5̲0̲ .) it pretty much states that there's nothing wrong with me, but if you look further into the medical records, you'll see where USMCFP Springfield, the same place that wrote the

Transfer Summary, medically ordered an orthotic shoe (Ex. _12_.) and ordered many work and activity restrictions for an indefinite period of time. (Ex. _20_.) Secondly, your Clinical Director has never examined me, so how could he possibly render any medical opinion. Thirdly, neither the Clinical Director's name or signature are on the response. sir, I ask that you intervene and order that I get proper medical care and that you remove the phrase "you are not considered disabled" from the response because neither is true or accurate." defendant Smith replied, "I'm not going to do that. If you are disatisfied with the response, you can file thru administrative remedied or you can go to court."

52.    On July 27, 2004, plaintiff received and authorization to possess and use a cane. Ex. _21_. Also on this same day plaintiff's medication was changed from Motrin® to Piroxicam®.

53.    On July 28, 2004, defendant Bussanich did violate plaintiff's rights under the **8th Amendment of the U.S. Constitution** and 18 U.S.C. § 4042(a)(2),(3) when he failed to respond to plaintiff's written request for evaluation, examination and treatment of his severe pain. Defendant Bussanich's failure to answer showed deliberate indifference to plaintiff's serious medical need of severe pain and suffering, allowing plaintiff to remain in sucha condition. Ex. _22_.

54.    On August 05, 2004, plaintiff was placed on **M**edically Unassigned Status for 90 days by defendant Peoria. Ex. _24_.

55.    On August 24, 2004, plaintiff went to sick-call and was seen by P.A. Kondradt for a refill of the pain medication Piroxicam®. P.A. Kondradt ordered the medication refilled and stated it would be ready at 8:30pm that day. Ex. _25_

56.    On August 30, 2004, after plaintiff did not receive the pain medication as ordered on 08-24-04, returned to sick-call in severe pain. plaintiff was seen by P.A. Lewis who became belligerent and refused to re-order the medication or to inquire what happened to the order by P.A. Kondradt. Due to this inaction and deliberately indifferent treatment plaintiff remained in severe pain and suffering until September 07, 2004 at which time he received the medication from defendant Hemphill. **Ex. 25, 26, .and 27.**

57.    In September 2004, plaintiff filed another administrative griveance concerning the inadequate medical care he was receiving. This griveance process was fully exhausted also. **Ex. 29, 30, 31, and 32.**

58.    Also in September 17, 2004, plaintiff was denied a orthopedic or double mattress for his severe pain by P.A. Kondradt who stated, "they won't let me gives those out." Plaintiff was forced to sleep on an extremely hard surface. **Ex. 33 and 34**

59.    On October 13, 2004, defendant Bussanich did violate plaintiff's rights under the **8th Amendment of the U.S.Constitution** and 18 U.S.C. § 4042(a)(2), (3) when he was deliberately indifferent to plaintiff's serious medical need of treatment for severe pain due to leg length descrepancy due to an incompetently performed hip replacement surgery, when he denied plaintiff from having an orthopedic specialist recommended increased lift placed on plaintiff's right shoe, denied plaintiff either a orthopedic or double mattress for severe pain and failing to properly supervise his subordinate defendant Salam when he took a erroneous measurement of both of plaintiff's legs. Also, defendant Bussanich violated plaintiff's constitutional right to be free from cruel and unusual punishment when he denied plaintiff's request for an extension of his medically unassigned status.

This exchange with defendant Bussanich was witnessed by a Physicians Assistant student intern only identified by his first name "Sean", "Shawn, or "Shaun". Defendant Bussanich's only action was to order a consult with Dr. Ball the Orthopedic Specialist. **Ex. 35.**

60.    Also on October 13, 2004, defendant Salam did violate plaintiff's rights under the **8th Amendment of the** U.S. **Constitution** and 18 U.S.C. § 4042(a) (2), (3) when with deliberate indifference, malicious and manifest intent, did so egregiously examine and measure plaintiff's right and left leg to reach and state the conclusion that, "There is no descrepancy really, my measurements show a slight descrepancy of maybe a ¼ of an inch." After plaintiff protested this finding defendant Salam further stated, "Matter of fact, I don't think you have a descrepancy of your leg, matter of fact I don't think there's anything wrong with your surgery. **Ex. 36.**

61.    Plaintiff respectfully asks the court to take **Judicial Notice under Federal Rules of Civil Procedure.** Rule 201. et. seq. that plaintiff avers the reason for Defendants Bussanich's and Salam's deliberate indiffernce, malicious and manifest intentional behavior towards plaintiff was that in order for plaintiff to even get the examination, an administrative griveance had to be filed **Ex. 29.** Plaintiff avers that defendant's behavior was an act of retaliation for that filing. **Ex. 36.**, therefore not an act of negligence .

62.    On October 13, 2004, defendant Smith violate plaintiff's rights under the **8th Amendment of the** U.S. **Constitution** and 18 U.S.C. § 4042(a)92),(3) when he was deliberately indifferent to plaintiff's serious medical needs of treatment of severe pain, by refusing to intervene on plaintiff's behalf in order for plaintiff to receive the proper medical treatment. When apprised of

the situation that occurred during the examination with defendants Bussanich and Salam, defendant Smith stated, "They don't care how you feel and I'm not getting involved." Defendant Levi acting with deliberate indifference, refused to address the inexcusable delay in medical treatment. Plaintiff was allowed to remain in severe pain and suffering.

63.    Also on October 13, 2004, defendant Levi did violate plaintiff's rights under the **8th Amendment of the U.S. Constitution** and 18 U.S.C. § 4042(a) (2),(3) when he was deliberately indifferent to plaintiff's serious medical needs of treatment for severe pain, by refusing to intervene on plaintiff's behalf in order for plaintiff to receive the proper medical treatment. When apprised of the situation that occurred during the examination with defendants Bussanich and Salam, defendant Levi stated, "So, you have to see the specialist again, so what." Defendant Levi acting with deliberate indifference refused to address the inexcusable delay in treatment. Plaintiff was allowed to remain in severe pain and suffering.

64.    Plaintiff respectfully asks the court to take **Judicial Notice** under **Fed.R.Civ.P. Rule 201. et. seq.** that both defendant Smith and Levi had prior knowledge of plaintiff's serious medical need and difficulty aquiring proper medical treatment from the Medical Department. **Ex. 02 and 30.**

65.    On October 18, 2004, plaintiff initiated the administrative griveance process with regards to defendants Bussanich, Salam, Smith and Levi denial of proper medical care on 10-13-04. **Ex. 37., 38., 39., and 40.**

66.    On November 05, 2004, plaintiff was given a work assignment at the institutional laundry/Clothing Issue Department. **Ex. 41.**

67.    On November 05, 2004, defendant Navarro did violate plaintiff's rights under the **8th Amendment of the U.S. Constitution** and **18 U.S.C. § 4042 (a)(2),(3)** when he refused to reinstate plaintiff's medically unassigned status thus allowing plaintiff to be forced to work in the institutional laundry which he knowingly understood to be a dangerous area where plaintiff could possibly be injured and also would be in severe pain. This denial of medical unassigned by defendant Navarro did cause plaintiff to be in severe pain and suffering due to the fact plaintiff was made to sit on a hard wooden bench for $3\frac{1}{2}$ hours a day. **Ex. 42. and 43.**

68.    Also, on November 05, 2004, defendants Bussanich and Salam did violate plaintiff's rights under the **8th Amendment of the U.S. Constitution** and **18 U.S.C. § 4042(a)(2),(3)** when both defendants were deliberately indifferent to plaintiff's serious medical need which was severe pain and suffering, when on October 13, 2004, both defendants denied and refused to extend plaintiff's medically unassigned status. This denial and refusal allowed plaintiff on November 05, 2004, to be placed in a work assignment at the institutional laundry which resulted in plaintiff being placed in a dangerous enviorment and made to suffer severe pain by sitting on hard wooden benches. **Ex. 35., 42., and 43.**

69.    As well, on November 05, 2004, defendants Smith and Levi did violate plaintiff's rights under hte **8th Amendment of the U.S. Constitution** and **18 U.S.C. § 4042(a)(2),(3)** when both defendants were deliberately indifferent to plaintiff's serious medical need which was severe pain and suffering, when on October 13, 2004, both defendants refused to intervene on plaintif's behalf to guarantee that plaintiff had proper and adequate medical care which included the extension of plaintiff's medically unassigned status. The result of defendants Smith and Levi failure to do so, allowed plaintiff to be placed in a work

assignment in the institutional laundry, resulting in plaintiff being placed in a dangerous enviorement and made to suffer severe pain by sitting on hard wooden benches. Ex. 38., 42., and 43.

70.    On December 22, 2004, plaintiff was re-evaluated by orthpedic Specialist Dr. Ball. Plaintiff asked Dr. Ball, "Doctor why am I here to see you?" Dr. Ball replied, "That's a good question, Ialready saw you in July and recommended a higher lift for your shoe. Did they give you the lift I ordered?" Plaintiff replied, "No they didn't." Dr. Ball then asked P.A. Bogler who was present at this examination, "he didn't get the lift yet, why not?" defendant Bogler looked at Dr. Ball but did not respond.Plaintiff hten told Dr. ball that the Staff Physicians here at the prison stated that you didn't put down any measurements. Dr. Ball replied, "I did put a measurement down, see (pointing to a place on the report that recommended a 3/4 inch lift) it's a 3/4 inch lift I recommended." Plaintiff told Dr. Ball that the Staff Physicians wanted a measurement of the leg descrepancy. Dr. Ball agitatedly, "Oh they want a measurement do they! Dr. Ball measured plaintiff with the following results; plaintiff's leg leg was 94 cm. and the right leg was 90 cm. a difference on conversion from metric to SAE of 1½ inch descrepancy. Dr. Ball also recommended that plaintiff should continue to use the cane for support. Ex. 42., 43., and 44.

71.    Also, on December 22, 2004, defendant Bogler did violate plaintiff's rights under the 8th Amendment of the U.S. Constitution and 18 U.S.C. § 4042(a) (2),(3) when he was deliberately indifferent to plaintiff's serious medical needs of severe pain, when he with no sound penological reason interfered with plaintiff seeking adequate medical care. Defendant Bogler did this when plaintiff requested from Orthopedic Specialist Dr. Ball a recommendation for a orthopedic

or double mattress for severe pain, defendant Bogler in a menancing manner stated, "that mattress thing is dead. Don't even ask, we don't do that here!" Because of defendant Bolger's interference with seeking treatment plaintiff was allowed to endure unnecessary pain and suffering. **Ex. 45.**

72.    Plaintiff respectfully asks the court to take **Judicial Notice** under **Fed.R.Civ.Evid. Rule 201. et seq.** that on January 18, 2005, plaintiff's legal work, which consisted of a uncompleted draft of a Temporary Restraining Order was confiscated by Senior Officer Specialist J.J. Steppie and taken to the Lieutenants Office after which defendant Levi appeared and was in the Lieutenants Office with the legal work for approximately 35 minutes. This taking of the legal work was not for any sound penological or security reason, and may have given defendant Levi an unfair advantage. The legal work was returned. **Ex. 46.**

73.    On February 15, 2005, plaintiff was called to the Health Services Unit by defendant Bolger. Defendant Bolger dispensed a variety of treatments such as Tylenol® to be taken with the Piroxicam®, Convalescent Status for 3 weeks and an order for a seat cushion. After the meeting with defendant Bogler, plaintiff was stopped by Defendant Bussanich who stated to plaintiff, "I want to apologize to you, we took a measurement of your leg that wasn't correct and may have caused you some hardship. Now I know about the lawsuit your filing and that's your right, I just want to apologize for any undue stress we may have caused you." Defendant Bussanich also stated that a revision of plaintiff's hip replacement surgery was being recommended by orthopedic specialist Dr. Ball. Plaintiff asks the Court to **See Ex. 47. and 48.**

74.    Plaintiff avers that from the period of April 2004 to February 2005, defendant Hemphill did violate plaintiff's rights under the **8th Amendment of the U.S. Constitution** and **18 U.S.C. § 4042(a)(2),(3)** when in his position as Health Services Administrator he was fully aware of plaintiff's medical condition of severe painand suffering and did not intervene onplaintiff's behalf so that plaintiff could receive proper and adequate medical care.

75.    Plaintiff respectfully asks the court to take **Judicial Notice** under the **Fed.R.Evid. Rule 201. et seq.** that **Ex. 49.** is from plaintiff's medical records show his sensitivity to taking both Motrin® and Naprosyn®.

76.    Plaintiff avers that all the defendants forementioned in this complaint did violate plaintiff's right to be free from cruel and unusual punishment as afforded by the **8th Amendment of the U.S. Constitution** and to be provided proper medical care pursuant to **18 U.S.C. § 4042(a)(2),(3)** by being deliberately indiffernt to plaintiff's serious medical need and denying treatment for said need for aperiod of approximately 10 months.

## J. INJUNCTIVE RELIEF REQUESTED

77.    Plaintiff avers   that although he receiving proper care at this time at U.S.P. Lewisburg, he request that the present level of care be maintained by order of this court. Plaintiff believes that the same denial of care will occur if not ordered by the court.

78.    Plaintiff request that defendants be restrained from altering or destroying  the medical records of plaintiff.

79.    Plaintiff request that defendants or their Agency the Federal Bureau of Prisons be restrained from any retaliatory transfers or other behavior towards plaintiff for filing this suit.

## K. DAMAGES

80.    As a direct and proximate result of each defendant's conduct, plaintiff suffered the following injuries and damages;

> **a)** Physical pain and mental anquish in the past and future
>
> **b)** Denial of medical care

## L. ATTORNEYS FEES

81.    Plaintiff is entitled to an award of Attorneys fees when such attorney is appointed for him under 28 U.S.C. § 1915(e)(1).

## M. PRAYER

82. For these reasons, plaintiff asks for judgment against defendants for the following;

> **a)** Actual damages of $ 150,000.00
>
> **b)** Punitive damages of $ 200,000.00
>
> **c)** Declaratory Judgment
>
> **d)** Cost of suit, including attorneys fee
>
> **e)** Injunctive relief.
>
> **f)** All other relief the court deems necessary.

83.    Plaintiff also asks the court to appoint counsel as plaintiff is a layman of the law, as well as a incarcerated person.

Respectfully submitted

By: *Frederick Henderson*
Frederick Henderson, Pro Se
Register No. 13219-014
U.S.P. Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

## VERIFICATION

STATE OF PENNSYLVANIA            §

COUNTY OF UNION                  §

On this day, Frederick Henderson, Register No. 13219-014, appeared before me, the undersigned notary public. After I Administered an oath to him, upon his oath, he said that he read the Complaint and that the facts stated in it are within his personal knowledge and are true and correct.

*Frederick Henderson*
Frederick Henderson
Register No. 13219-014

SWORN TO and SUBSCRIBED before me by Frederick Henderson on April 21, 2006.

Notary Public in and For The State
of Pennsylvania.

(23)

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FREDERICK HENDERSON,                    )
                  Plaintiff             )        SUMMONS:
                                        )
                                        )        Civil Action No.
                                        )
                                        )
            v.                          )
                                        )
                                        )
                                        )
DR. ANTHONY BUSSANICH, M.D.             )
DR. ABDEL SALAM, M.D.                   )
HEALTH SERVICES ADMINISTRATOR JOHN HEMPHILL, )
PHYSICIANS ASSISTANT IVAN NAVARRO,      )
PHYSICIANS ASSISTANT MARK PEORIA,       )
PHYSICIANS ASSISTANT WILLIAM BOGLER.    )
ASSOCIATE WARDEN TROY LEVI, and         )
WARDEN JOSEPH V. SMITH are sued in their )
individual and official capacities.     )
                  Defendants            )

TO THE ABOVE NAMED DEFENDANTS:

    You are hereby summoned and required to serve upon plaintiff, whose

address is Register No. 13219-014, Unit C-Block, Cell 122 L, United States

Penitentiary Lewisburg, P.O. Box 1000, Lewisburg, PA 17837 an answer to the

complaint  which is  herewith served upon you, within 20 days after service

of this summons upon you, exclusive of the day of service, or 60 days if the

U.S. Government or officer / agent thereof is a defendant. If you fail to do

so, judgment by default will be taken against you for the relief demanded in

the complaint.

Clerk of the Court

Date:_____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FREDEREICK HENDERSON           )
                Plaintiff      )      PLAINTIFF'S
                               )      AFFIDAVIT:
                               )      OF INDIGENCE
        v.                     )      Civil Action No.
                               )
                               )
DR. ANTHONY BUSSANICH, M.D. et al.,  )
                Defendants     )


## PLAINTIFF FREDERICK HENDERSON'S AFFIDAVIT OF INDIGENCE

On this day, Frederick Henderson, appeared before me, the undersigned notary public. After I administered an oath to him, upon his oath, he said:

1.    "My name is Frederick Henderson, and I am the plaintiff in this case. I have personal knowledge of the facts stated in this affidavit.

2.    I wish to proceed as an indigent and prosecute the lawsuit for a **Bivens Action**, without pre-payment of fees or cost.

3.    I receive no amount of employment income, as I am presently a handicapp Federal prisoner.

4.    I receive no amount of funds of government subsidy or income.

5.    I receive no other income , e.g. spousal, interest, or dividends.

6.    I do not own any property, I have only 0.54 cents in my inmate trust account, and I owe $ 10,000.00 dollars in restitution, and $ 750.00 dollars to

the United States District Court fo the Western District of Missouri.

7.    I am unable to pay the court cost or a partial initial filing fee because I receive no income from any source, or expect to in the near future. I am a medically handicap federal prisoner who cannot be employed.

8.    I am entitled to the relief sought in this complaint, because the merits in this case are not frivolous or malicious, and I have the likelihood to prevail on the merits of this suit.

9.    I verify that the statements made in this affidavit are true and correct."

Frederick Henderson, Pro Se
Register No. 13219-014
U.S.P. Lewisburg
P.O. Box 1000
Lewisburg, PA 17837



SWORN TO and SUBSCRIBED before me by Frederick Henderson on _21_ day of _April_ , 2006.

Notary Public in and for The State of Pennsylvania

# CERTIFICATE OF SERVICE

I, __Frederick Henderson_____, hereby certify that I have served a true and correct copy of the foregoing: **Complaint; In The United States District Court For The Middle District of Pennsylvania, Frederick Henderson, Plaintiff; Dr. Anthony Bussanich, M.D., et al., Defendants**

Which is deemed filed at the time it was delivered to prison authorities for forwarding to the court, <u>Houston vs. Lack</u>, 101 L.Ed.2d 245 (1988), upon the court and parties to litigation and/or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope addressed to: **United States Attorney General**
**Mr. Alberto Gonzalez**
**U.S. Department of Justice**
**Robert F. kennedy Building, Room 5111**
**950 Pennsylvania Avenue, N.W.**
**Washington D.C. 20530**

and deposited same in the United States Postal Mail at the United States Penitentiary,

Signed on this _____24_____ day of __April_____, 2006

Respectfully Submitted,

REG. NO. _13-219-014_

# CERTIFICATE OF SERVICE

I, __Frederick Henderson_____, hereby certify that I have served a true and correct copy of the foregoing: **Complaint; In The United States District Court The Middle District of Pennsylvania, Frederick henderson, Plaintiff; Dr. Anthony Bussanich, M.D., et al., Defendants**

Which is deemed filed at the time it was delivered to prison authorities for forwarding to the court, Houston vs. Lack, 101 L.Ed.2d 245 (1988), upon the court and parties to litigation and/or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope addressed to: **Clerk Of The Court**
**United States District Court For the Middle District of Pennsylvania Herman T. Schneebeli Federal Building 240 W. Third Street Williamsport, PA 17701**

and deposited same in the United States Postal Mail at the United States Penitentiary,

Signed on this ___24_____ day of __April_____, 2006

Respectfully Submitted

REG. NO.__13219-014_____

# CERTIFICATE OF SERVICE

I, Frederick Henderson                , hereby certify that I have served a true
and correct copy of the foregoing: Complaint; In The United States District Court For
The Middle District of Pennsylvania, Frederick Henderson, Plaintiff;
Dr. Anthony Bussanich, M.D. et al., Defendants


Which is deemed filed at the time it was delivered to prison authorities for forwarding to
the court, Houston vs. Lack, 101 L.Ed.2d 245 (1988), upon the court and parties to
litigation and/or his/her attorney(s) of record, by placing same in a sealed, postage
prepaid envelope addressed to: U.S. Attorney For The Middle District Of Pennsylvania
Mr. Thomas Marino, William J. Nealon Federal Building and Courthouse, Suite309
235 N. Washington Avenue, Scranton, PA 18501


and deposited same in the United States Postal Mail at the United States Penitentiary,

Signed on this _____24_____ day of __April__, 2006

Respectfully Submitted,

_Frederick Henderson_ (signature)

REG. NO. _13219 0/K_